COPIES SENT

12/4/03
date    by

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| LARRY LYLE LASKO,<br>     Plaintiff, | :<br>:<br>: |
| v. | :    PRISONER<br>:    00cv1967(LEK)(WWE)<br>: |
| CHRIST MELLAS, Deputy<br>Superintendent of Programs,<br>Ogdensburg Correctional Facility;<br>DOUG LUMB, Vocational Supervisor,<br>Ogdensburg Correctional Facility;<br>ROBERT PIRIE, Senior Counselor,<br>Ogdensburg Correctional Facility;<br>MARK CHALOM, Facility's Medical<br>Doctor, Ogdensburg Correctional<br>Facility; MARRY ANN LANDRY, Nurse<br>Administrator, Ogdensburg<br>Correctional Facility,<br>     Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

### RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Larry Lasko, asserts that the defendants, Deputy Superintendent of Programs Christ Mellas, Vocational Supervisor Douglas Lumb, Senior Correction Counselor Robert Pirie, Dr. Mark Chalom, and Nurse Administrator Mary Ann Landry[1], denied him adequate medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

The defendants have filed for summary judgment. For the following reasons, defendants' motion for summary judgment will be granted.

### BACKGROUND

After reviewing the moving papers with the statements of

---

[1]   Misidentified as Marry Ann Landry on the face of the complaint.

fact, the affidavits and other supporting evidentiary materials, the Court finds the following facts to be undisputed.

During the period of time relevant to this action, Christ Mellas was the Deputy Superintendent of Programs at Ogdensburg Correctional Facility, and also served as Chairman of the Time Allowance Committee. Doug Lumb was the facility's Education Supervisor and a member of the Program Committee. Robert Pirie was the facility's Senior Correction Counselor, and Program Committee Chairperson. Dr. Mark Chalom was the Facility Health Services Director, and R.N. Mary Ann Landry was the Nurse Administrator.

Plaintiff is a former New York State inmate who suffers from chronic Hepatitis C and chronic liver inflammation, which conditions were diagnosed in 1993 and 1995, respectively.

In November, 1998, plaintiff began serving his term of incarceration at issue in this lawsuit.

Until late April, 2000, plaintiff was at Hudson Correctional facility where he participated in the Residential Substance Abuse Treatment ("RSAT") program.

On January 24, 2000, Lester Wright, DOCS Deputy Commissioner and Chief Medical Officer, denied plaintiff's application for the interferon/ribaviron treatment protocol described in DOCS Health Services' Hepatitis C Primary Care Practice Guideline. The Hepatitis C guideline lists certain criteria that should be

considered in evaluating whether an inmate should receive the Hepatitis C treatment. These criteria include, inter alia, successful completion in an alcohol and substance abuse treatment program, no evidence of active substance abuse during the prior six months, and anticipated incarceration for at least twelve months. Plaintiff's request for the Hepatitis C treatment protocol was denied because his conditional release date was less than one year away.

In April, 2000, plaintiff received an inmate misbehavior report for drug use. At a hearing, plaintiff was found guilty of drug charges, and the hearing officer, who recommended that he lose six months of good time. Plaintiff also failed to complete the RSAT program.

On May 24, 2000, Dr. Wright denied plaintiff's second application for the Hepatitis C treatment protocol, because plaintiff "had drug use problem on 4/27/00," and was therefore ineligible for treatment for six months from that date.

Plaintiff was transferred to the Greene Correctional Facility, and then to Ogdensburg in September, 2000.

On September 19, 2000, a restriction order was issued by medical staff that plaintiff should not be permitted to work in the mess hall.

On September 22, 2000, plaintiff saw Dr. Chalom, at which time he requested the Hepatitis C treatment protocol and had his

left wrist examined. Plaintiff's Ambulatory Health Records ("AHR") reflect that Dr. Chalom found plaintiff to be an "apparent candidate" for the treatment. Dr. Chalom found that plaintiff's left wrist, which had been fractured in the past, was able to make various movements without any tenderness or pain. Plaintiff's grip strength and range of motion were found to be normal. Accordingly, Dr. Chalom found no indication that an X-ray was warranted.

Ogdensburg has four program modules ("Mod"). Mod 1 is in the morning; Mod 2 is in the afternoon; Mod 3 is in the early evening; and Mod 4 is in the late evening. In general, an inmate is formally assigned to Mod programs a week after arrival at Ogdensburg. Until formally assigned, an inmate is listed as "Reception."

On September 25, 2000, plaintiff appeared before the Program Committee, and was assigned to Building Maintenance for Mods 1 and 2, effective October 2, 2000.

On September 28, 2000, bloodwork was drawn from plaintiff for testing as a preliminary step towards beginning the protocol treatment.

On October 2, 2000, plaintiff met again with the Program Committee, and was assigned to RSAT for Mod 3, effective October 9, in addition to his Building Maintenance assignment during Mod 1 and Mod 2.

The AHR dated October 4, 2000, states that plaintiff "has been given 6 more months," an apparent reference to the fact that plaintiff's conditional release date had been extended from November 5, 2000 to May 5, 2001. On the AHR dated October 6, 2000, Nurse Landry noted that plaintiff did not meet the Hepatitis C treatment protocol criteria, without any further specification. By affidavit, defendant Landry states that plaintiff had not completed an alcohol and substance abuse treatment program, had evidence of active substance abuse during the prior six months, and the still did not meet the requirement that he remain incarcerated for another year.

In a letter dated October 9, 2000 to defendant Mellas, plaintiff asked that his six months of good time be restored in light of his medical condition. In a memorandum, Mellas responded that the six months good time would not be restored.

On October 10, 2000, one day after starting his RSAT program for Mod 2, plaintiff complained to his RSAT counselor that he needed to be excused from the program so that he could rest on account of his medical condition.

During the week of October 12, 2000, plaintiff signed out of the RSAT program, claiming that it interfered with his need for bed rest.

Subsequently, plaintiff sent defendant Mellas a letter in which he complained of inadequate medical care, specifically the

denial of the Hepatitis C treatment protocol. Mellas spoke with Nurse Whitman in the medical unit and was advised that plaintiff was not an appropriate candidate for the treatment that he wanted. Mellas was advised that plaintiff presented a risk for the treatment, and that plaintiff was not eligible for the treatment because he was not anticipated to serve another year.

On October 16, 2000, plaintiff appeared before the Program Committee, at which time his programs were changed to Lawn and Grounds for Mod 1, and Pre-GED (an academic program) for Mod 2, effective immediately.

On October 27, plaintiff saw Dr. Chalom about his Lawn and Grounds assignment. On that day, a medical restriction order was issued prohibiting plaintiff from participating in active sports, prolonged walking, and restricting him to lifting weight under 25 pounds. It also prescribed that plaintiff be housed in a bottom bunk.

On October 31, 2000, plaintiff filed an inmate grievance complaint with the Inmate Grievance Review Committee at Ogdensburg. In that complaint, plaintiff asserted that (1) Dr. Chalom refused to take X-rays of plaintiff's left wrist; (2) the medical staff had not given him the Hepatitis C treatment protocol; and (3) he wanted assistance with his "disability papers."

On November 2, 2000, Nurse Landry conducted an investigation

of the inmate grievance complaint filed by plaintiff.  She concluded that (1) plaintiff did not meet the criteria for the Hepatitis C treatment protocol; (2) Dr. Chalom's examination of plaintiff's left wrist did not give rise to a problem warranting an X-ray; and (3) that liver disease no longer qualified as a disability that would enable plaintiff to obtain Social Security Disability Insurance benefits.

Thereafter, plaintiff wrote to Captain Sara Kurz complaining that his requests for medical attention were being denied.  In a memorandum dated March 2, 2001, Captain Kurz wrote that she had checked with Nurse Landry who informed her that plaintiff did not fit the criteria for the Hepatitis C treatment protocol.

On November 6, 2000, plaintiff appeared before the Program Committee, which removed him from Lawn and Grounds on the basis of the medical order prohibiting plaintiff from heavy lifting. Plaintiff was reassigned to General Business for Mod 1, and Pre-GED for Mod 2, effective November 17, 2000.

Plaintiff was released from state prison on May 5, 2001, on conditional release.  For six months following his release, plaintiff was required to report to a parole office.

Plaintiff's medical records reflect that, during his incarceration at Ogdensburg, he was provided with calcium carbonate, multi-vitamins and ibuprofen, which are generally helpful for individuals suffering from decreased liver function.

## DISCUSSION

### STANDARD OF REVIEW

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F. 2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. <u>American International Group, Inc. v. London American International Corp.</u>, 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which it has the burden of proof, then summary judgment is appropriate. <u>Celotex Corp.</u>, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. <u>Anderson</u>, 477 U.S. at 249. A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire</u>

Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

Eighth Amendment Claims

Plaintiff alleges that defendants violated the Eighth and Fourteenth Amendments by neglecting to bring about the proper treatment for any of his medical conditions, and by forcing him to participate in programming that was too strenuous and caused complications to his medical conditions. Defendants' motion argues that summary judgment should enter because plaintiff cannot prove (1) the medical defendants, Dr. Chalom and R.N. Landry, acted with the requisite state of mind, and (2) the non-medical defendants, Christ Mellas, Doug Lumb, and Robert Pirie, were involved in plaintiff's medical treatment, and were deliberately indifferent to his medical needs in assigning his program Mods.

The Eighth Amendment's bar on inflicting cruel and unusual punishments proscribes more than physically barbarous punishments

but prohibits penalties that are grossly disproportionate to the offense as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency. Hutto v. Finney, 437 U.S. 678, 685 (1978). There is no static test for determining whether conditions of confinement are cruel and unusual, but the Court must consider its meaning according to "evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347. Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment.

The Eighth Amendment does not require unqualified access to health care, but an inmate may prevail on an Eighth Amendment claim by showing that a prison official acted with deliberate

indifference to that inmate's serious medical need. <u>Hernandez v. Keane</u>, 341 F. 3d 137 (2d Cir. 2003). Thus, plaintiff's claim first involves the objective consideration of whether the alleged deprivation is "sufficiently serious." <u>Chance v. Armstrong</u>, 143 F. 3d 698, 702 (2d Cir. 1998). The court then turns to the subjective consideration of whether a defendant acted with deliberate indifference. <u>Hathaway v. Coughlin</u>, 37 F. 3d 63, 66 (2d Cir. 1994).

<u>Medical Treatment Claims Against Dr. Chalom and R.N. Landry</u>

The Court assumes, for purposes of ruling on this motion, that plaintiff's wrist injury, liver condition, and Hepatitis C are serious injuries or medical conditions. However, based on the evidence adduced, plaintiff cannot prove that Dr. Chalom and R.N. Landry acted with deliberate indifference.

To act with deliberate indifference, officials must intentionally deny or delay access to medical care or intentionally interfere with the treatment once prescribed. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). It is well established that a disagreement concerning the proper treatment does not give rise to an Eighth Amendment violation. <u>Chance v. Armstrong</u>, 143 F. 3d 698, 703 (2d Cir. 1998). In <u>Chance</u>, the Second Circuit elaborated that medical malpractice may rise to the level of deliberate indifference only when the malpractice involves an act or failure to act that evinces a conscious

11

disregard of a substantial risk of serious harm.  A medical decision not to order an X-ray, or take additional diagnostic techniques or forms of treatment, does not represent cruel and unusual punishment.  Estelle, 429 U.S. at 107.

The gravamen of plaintiff's claims against Dr. Chalom and R.N. Landry is his dissatisfaction with the course of his treatment.  The evidence shows that plaintiff was not denied medical care.  Dr. Chalom examined the plaintiff's wrist and found that it was not necessary to take X-rays.  Plaintiff was provided with calcium carbonate, multi-vitamins, and ibuprofen to help his decreased liver function.

He was denied the Hepatitis C treatment protocol because he did not meet the Hepatitis C guideline criteria used to evaluate whether an inmate should receive that treatment.  Further, Chief Medical Officer Lester Wright made the first two determinations that plaintiff was ineligible for the Hepatitis C treatment protocol based on plaintiff's failure to complete a substance abuse program, his prior drug use within the last six months, and his release date.  Upon plaintiff's third application, the same guideline criteria were still not satisfied, and as R.N. Landry noted on plaintiff's AHR, he was not eligible for the treatment.  Accordingly, the Court does not find evidence that gives rise to an inference that Dr. Chalom or R.N. Landry acted with deliberate indifference.

<u>Medical Treatment Claims Against Mellas, Lumb and Pirie</u>

Defendants move for entry of summary judgment on any claim related to plaintiff's medical care asserted against Mellas, Lumb and Pirie. Defendants argue that these defendants are non-medical supervisory officials who were not involved in plaintiff's medical care, and who lack personal involvement in the alleged constitutional deprivation.

Supervisory officials must have some personal involvement in the alleged unlawful conduct to be held liable under section 1983, and they cannot be held liable by virtue of the actions of subordinates. <u>Gill v. Mooney</u>, 824 F. 2d 192, 196 (2d Cir. 1987). Plaintiff must show that defendants (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) were grossly negligent in supervising subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. <u>Colon v. Coughlin</u>, 58 F. 3d 865, 873 (2d Cir. 1995).

No evidence suggests that defendants Lumb or Pirie had involvement in the plaintiff's medical care to an extent rendering them liable for an Eighth Amendment violation.

For purposes of ruling on this motion, the Court assumes that defendant Mellas has sufficient personal involvement based on his investigation of plaintiff's complaint concerning the alleged denial of the Hepatitis C treatment protocol.  However, the evidence does not suggest that he was deliberately indifferent to plaintiff's needs.  He was advised by Nurse Whitman in the medical unit that plaintiff was not an appropriate candidate for the treatment.  Accordingly, based on that information from a medical professional, he took no further action regarding plaintiff's complaint.  His conduct does not give rise to an Eighth Amendment violation.

<u>Inappropriate Programming Claims Against Mellas, Lumb and Pirie</u>

Plaintiff asserts that defendants required him to participate in programs that were too strenuous for his medical condition.  Plaintiff alleges that defendants "were aware that the programming was physically inappropriate and interfered with plaintiff's medical condition, yet continued forcing him into programs by threatening him with disciplinary tickets for not compliance with these programs."  The evidence does not substantiate plaintiff's claim.

The Program Committee adjusted plaintiff's programming in accordance with the medical restriction orders issued by the medical unit.  The medical unit issued a restriction order on October 27, 2000, that prohibited plaintiff from participating in

active sports and prolonged walking, and that restricted him to only light weight lifting. At the next meeting of the Program Committee on November 6, 2000, plaintiff was removed from the Lawn and Grounds program, and was placed into business and academic programs. No evidence raises an inference that defendants forced plaintiff into what they knew were physically inappropriate activities that would interfere with his medical condition. The evidence demonstrates that defendants responded to plaintiff's need for adjustment with programming according to information they received from the medical unit. Accordingly, summary judgment will be granted in defendants' favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [doc. 20] is GRANTED. The clerk is instructed to close this case.

**SO ORDERED** this _2d_ day of _December_, 2003.

Warren W. Eginton
Senior United States District Judge
Sitting by Designation